# UNITED STATES DISTRICT COURT
# FOR DISTRICT OF MASSACHUSETTS

```
===============================
                               :
AUCTUS FUND, LLC,              :
                               :
          Plaintiff,           :
                               :
     v.                        :     Civil Action No. _____
                               :
REDWOOD SCIENTIFIC             :
  TECHNOLOGIES, INC.,          :
                               :
          Defendant.           :
                               :
===============================
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1)    The Plaintiff, Auctus Fund, LLC, (hereinafter "Auctus" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendant, Redwood Scientific Technologies, Inc., (hereinafter the "Company" or "RSCI"), in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted for such damages arising from, and resulting from, the Defendant's violations of the following:

a)    Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

b)    Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101, *et seq.*, *as amended* (hereinafter the "Uniform Securities Act");

c)    breach of contract;

d)    breach of implied covenant of good faith and fair dealing;

e)      unjust enrichment;

f)      breaches of fiduciary duty;

g)      fraud and deceit;

h)      negligent misrepresentation; and/or

i)      the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11.

2)      The Plaintiff further alleges that, as a result and as caused by the Defendant's breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus has suffered irreparable harm, requiring injunctive relief and specific performance, harm to its business and reputation in the investment industry, damages from the Defendant's coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3)      The Plaintiff respectfully requests that its causes of action against the Defendant proceed to a trial by jury, that a judgment be entered on all Counts against the Defendant and that Auctus be awarded its general, compensatory and consequential damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. <u>PARTIES</u>

4)      The Plaintiff, Auctus Fund, LLC is a limited liability company, duly organized in the State of Delaware, with its principal place of business located at 545 Boylston Street, 2nd Floor, Boston, Massachusetts 02116.

2

5)      Upon information and belief, the Defendant, Redwood Scientific Technologies, Inc., is a corporation, duly organized in the State of Delaware, with a principal place of business located at 820 N. Mountain Ave, Suite 100, Upland, California 91786.

### III. JURISDICTION AND VENUE

6)      The Plaintiff asserts that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and under the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a, *et seq.* (hereinafter the "Securities Act"), and under the Exchange Act, 15 U.S.C. §§ 78a, *et seq.*

7)      The Plaintiff contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents (defined below), the Plaintiff Auctus and Defendant RSCI agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the Commonwealth of Massachusetts. Additionally, this Court is in such District where the Plaintiff Auctus is headquartered and has its principal place of business and is where the violative conduct described herein is alleged to have occurred.

8)      This Court has personal jurisdiction, generally and specifically, over the Defendant by express terms of the Agreement, and as arising from its extensive business contacts, generally over time and specifically, in its business dealings with Plaintiff Auctus within the Commonwealth of Massachusetts.

### IV. FACTUAL BACKGROUND

#### A.      The Auctus / RSCI Transactions Documents and Contracts

9)      On or about May 8, 2018, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "First Purchase Agreement") and a certain Convertible Promissory Note (hereinafter the "First Convertible Note" and, with the First Purchase Agreement

and other documents, collectively hereinafter the "First Transaction Documents"), thereby entering into a contract with Plaintiff Auctus for its investment in the principal amount of $250,000.00 in RSCI.  *See* First Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit A**; First Convertible Note, attached, restated and incorporated by reference herein as **Exhibit B**.

10)     On or about July 18, 2018, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Second Purchase Agreement," and, with the First Purchase Agreement, collectively hereinafter as the "Purchase Agreements") and a certain Convertible Promissory Note (hereinafter the "Second Convertible Note" and, with the First Convertible Note, collectively hereinafter as the "Convertible Notes" or the "Notes"; and, with the Second Purchase Agreement and other documents, collectively hereinafter the "Second Transaction Documents"; and, with the First Transaction Documents, collectively hereinafter as the "Transaction Documents"), thereby entering into further contracts with Plaintiff Auctus for its additional investment in the principal amount of $725,000.00 in RSCI. *See* Second Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit C**; Second Convertible Note, attached, restated and incorporated by reference herein as **Exhibit D**.

11)     Thus, as of on or about July 18, 2018 and by the Transaction Documents, the Plaintiff had invested the principal amount of $975,000.00 in Defendant RSCI.

12)     A review of the Plaintiff's Transaction Documents reveals that the Notes have a conversion feature into which entitles the Plaintiff to convert, at amounts and upon timing that Auctus deemed appropriate, the Defendant's debt obligations, in whole or in part, into freely traded shares of RSCI common stock. Under the terms and conditions of the Transaction Documents, the

Plaintiff has, and has had, a contractual right to convert at a price for RSCI common stock, averaged over a series of prior trading days, including and preceding the Conversion Date.

13)     By the Transaction Documents, the Defendant is, and, at all relevant times, was, also required to allocate and reserve shares of its common stock for future conversions by the Plaintiff. The reservation of shares was an independent obligation by the Defendant to the Plaintiff, and was a mechanism by which to effectuate the share conversion as envisioned by the Notes.

14)     Thus, in detrimental reliance upon the information, representations and statements from the Defendant, the Plaintiff invested almost One Million Dollars in the Company, which has, and has had, a fiduciary duty and a duty of the utmost loyalty to the Plaintiff.

15)     Unfortunately, to its detriment, the Plaintiff has learned that the Defendant had misrepresented and deceived the Fund, and omitted material information while having a duty of disclosure, regarding the Company, and perpetrated securities fraud in connection with the offer, purchase and sale of securities, in violation of, *inter alia*, Section 10(b) of the Securities Exchange Act of 1934, *as amended*, and Rule 10b-5, as promulgated thereunder, and the Massachusetts Uniform Securities Act, M.G.L. c. 110A, §§101, *et seq., as amended*.

**B.     Defendant's Misrepresentations and Omissions of Material Facts and Securities Fraud in Connection with Offer, Purchase and Sale of Securities**

16)     The Plaintiff asserts and alleges that the Defendant misrepresented, omitted and failed to provide material facts to Auctus in connection with its investments and in the offer, purchase and sale of securities, and especially with respect to the business, finances, operations and other material matters relating to the Defendant, including but not limited to certain corporate transactions of Defendant RSCI.

17)     Solely as an example of such material misrepresentations, omissions and/or misleading or false information, on or about April 8, 2015, the Defendant published and disseminated certain statements, entitled, *"Kevin Harrington Joins Redwood Scientific Technologies Board of Directors,"* which provided, in pertinent part, as follows:

LOS ANGELES, April 8, 2015 /PRNewswire/ -- Redwood Scientific Technologies, Inc. today announced the appointment of Kevin Harrington onto the board of directors, effective immediately. This appointment expands the board to six directors. Kevin Harrington will play an active role overseeing international and domestic retail distribution operations. "I'm thrilled and excited to be joining the board of directors of Redwood Scientific Technologies," said Kevin Harrington. "I truly believe that what they have developed is a 1 in 10,000 success, not only from a direct-to-consumer standpoint but the future of what thin film delivery technology holds for the delivery of over-the-counter and pharma grade medication. I believe the future of the company is very bright and I look forward to taking an active role in international and domestic retail distribution guiding the company to the success it can be." President and CEO Jason Cardiff welcomes Kevin Harrington onto the board of directors and expects his retail distribution experience to be invaluable in helping management maintain the company's current growth trajectory.

"As President and CEO of Redwood Scientific Technologies, I am thrilled and excited to have Kevin Harrington and all that he brings to the table join our board of directors," said Jason Cardiff. "I believe that Kevin, along with the other board members, will guide the company and lead us into the future and position us to be the leader in thin film delivery technology." Kevin Harrington is acknowledged as the inventor of the infomercial and one of the founders of the As Seen On TV products. He is currently the founder of Star Shop LLC. Prior to founding Star Shop LLC., he formed Quantum International which grew to $500 million in sales selling products in 100 countries in 20 languages. He also formed Reliant International Media and HSN Direct in conjunction with Home Shopping Network. He is the founder of ERA (Electronic Retailers Association), which operates in 45 countries, and EO (Entrepreneurs Organization) which boasts combined member sales in excess of $500 billion. In 2009, Kevin Harrington was selected as one of the original Sharks on the ABC hit show "Shark Tank" in which he appeared in over 150 segments. In 1984, Kevin Harrington conceptualized and produced the world's first 30 minute infomercial and in 1980 he started The Small Business Center along with Franchise America. He has been involved in over 500 product launches that have resulted in sales of over $4 billion worldwide with 20 products that have reached individual sales of over $100 million. Kevin Harrington was named one of the 100 best entrepreneurs in the world by Entrepreneur Magazine.

18)     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

19)     Solely as a further example of such material misrepresentations, omissions and/or misleading or false information, on or about, April 9, 2015, the Defendant published and disseminated certain statements, entitled "*Patrick Moynihan joins Redwood Scientific Technologies Board of Directors*" which provided, in pertinent part, as follows:

> LOS ANGELES, April 9, 2015 /PRNewswire/ -- Redwood Scientific Technologies, Inc. today announced the appointment of Patrick Moynihan to the board of directors. Patrick Moynihan will utilize his business development and management experience to navigate this critical high growth phase.

> "I look forward to working closely with the Redwood Scientific board to grow their unique business model," said Patrick Moynihan. "The company's platform is the ideal vehicle to bring cutting edge wellness products to market using a unique delivery system. I'm eager to create shareholder value and ensure the longevity of Redwood's business and health offerings. The part which most excites me is helping large groups of people achieve health and balance in their lives!"

> President and CEO Jason Cardiff welcomes Patrick Moynihan to the Redwood Scientific Technologies Board and is eager to leverage his strategic experience for the growth of the company.

> "Patrick brings a unique set of experience and skill sets to the company," said Jason Cardiff. "We look forward to working with such a true unconventional and unique thinker that understands the global financial markets and has the ability to deliver real returns to our shareholders." Patrick Moynihan is the co-author of four patents for collection innovations along with being the founder of PayLock, Inc. As Chairman and CEO of PayLock, he grew the company to be the worldwide leader in vehicular-related debt collections. From 2007-2014, Patrick Moynihan managed two PayLock IPT board seats while growing the company to several hundred employees. In 2011, he formed Ithaca Partners, LLC. where he managed a concentrated portfolio of venture investments while advising companies on capital formation and business development. From 2004-2006, Patrick Moynihan served on the Board of Trustees for Matheny School and Hospital where he initiated and lead numerous capital raising initiatives.

20)     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

21)     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about May 15, 2015, the Defendant published and disseminated certain statements, entitled "*Prolongz Named #1 Informercial for April 2015,*" which provided, in pertinent part, as follows:

> LOS ANGELES, May 15, 2015 /PRNewswire/ -- Redwood Scientific Technologies, Inc. is proud to announce that Prolongz, the company's over-the-counter drug for the treatment of premature ejaculation and the only such drug that can be taken orally through sublingual strip delivery, has been ranked as the number one performing infomercial for the month of April by Jordan Whitney, Inc. In the latest "Greensheet" IMS report from Jordan Whitney, Inc., Prolongz achieved the top position in the "Personal Care Infomercial Category Rankings" for products sold through longform televised media. This recent development echoes the success Prolongz experienced in 2014 when it ranked as the number one performing infomercial product for four consecutive months.

> "As a company, we are proud to have our first product ranked at number one in the United States and we look forward to maintaining our position while growing our brand," said Eunjung Cardiff, Chief Marketing Officer and Co-Founder of Redwood Scientific Technologies, Inc.

> Prolongz ranked above all other infomercial products in the "Personal Care Infomercial Category" which include the following: male enhancement supplements, nutritional supplements, cleansing systems, liquid pain relief supplements, joint health supplements, brain health supplements, inversion therapy tables, Omega 3 supplements, and memory improving supplements.

> Jordan Whitney is the leading independent clearing house for up-to-date information on direct response television, infomercials, short-form direct response television commercials, products sold via infomercials, and the businesses involved in their production and distribution. Jordan Whitney is also the independent "go-to" consulting firm for leading companies in the direct response television industry and retailers who wish to draw upon its extensive database of reviews and analysis of direct response commercials.

22)     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

23)     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about July 13, 2015, the Defendant published and disseminated certain statements, entitled "*Rhonda Pearlman Joins Redwood Scientific Technologies As General Counsel*," which provided, in pertinent part, as follows:

> LOS ANGELES, July 13, 2015 /PRNewswire/ -- Redwood Scientific Technologies, Inc. (Redwood) today announced the appointment of Rhonda Pearlman as General Counsel effective immediately. She will serve on the company's Executive Leadership Team and will report directly to President and Chief Executive Officer Jason Cardiff. "Rhonda Pearlman is an experienced and respected attorney with vast experience in the pharmaceutical industry," said Cardiff. "She will be invaluable in the upcoming IPO and in the years ahead as we continue our success with new thin film products that meet the needs of consumers."
>
> As General Counsel, she will manage general corporate matters, debt and equity financing, litigation, and intellectual property.
>
> Ms. Pearlman joins Redwood from the law offices of Stuart L. Melnick, LLC, Kramer Levin Naftalis & Frankel LLP, and Par Pharmaceutical, Inc. where she served as Contract Attorney. She has been an Associate at Baker & McKenzie, Skadden, Arps, Slate, Meagher & Flom LLP & Affiliates, and at Schulte Roth & Zabel LLP. She earned her Bachelors of Science and Masters in Pharmacology as well as her Juris Doctor from the University of Sydney.

24)     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

25)     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about July 31, 2015, the Defendant

published and disseminated certain statements, entitled "*Redwood Launches Independent Sales Representative Program*," which provided, in pertinent part, as follows:

> LOS ANGELES, July 31, 2015 /PRNewswire/ -- Redwood Scientific Technologies, Inc. (Redwood) announced today that it has launched a nationwide independent sales representative program for Prolongz: the only FDA registered over-the-counter thin film medication for the treatment of premature ejaculation and erectile dysfunction.
>
> In the coming months, Redwood plans on having multiple independent sales representatives in place throughout every state in the country. Each independent sales representative will be able to earn commissions while establishing and maintaining their own business and revenue through the sale of Prolongz. Redwood has launched its independent sales representative registration page at www.redwoodscientific.co/reps.
>
> "The launch of the Prolongz independent sales representative program is a key milestone for Redwood. Although Prolongz is already sold through many different sales channels, a network of independent sales representatives will provide substantial revenue and scale for the brand. By offering every sales representative a chance to earn money simply by introducing Prolongz to their local convenience and retail stores, Redwood is confident that it will attain immediate and impactful penetration of new locations and marketplaces," said President and CEO Jason Cardiff. Redwood is offering the independent sales representative opportunity without any cost or investment and will also offer online-based sales support so that representatives can market Prolongz with the confidence and necessary knowledge to close sales.

26)     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

27)     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about March 4, 2016, the Defendant published and disseminated certain statements, entitled "*Dr. Salah Zaki Appointed Chief Medical Officer at Redwood Scientific Technologies Inc.*," which provided, in pertinent part, as follows:

LOS ANGELES, March 4, 2016 /PRNewswire/ -- Redwood Scientific Technologies, Inc. today announced that it has appointed M. Salah Zaki, M.D., as Chief Medical Officer. In this role, Dr. Zaki will oversee scientific research, assist with FDA registration, medical regulation, product development, and global expansion.

"Dr. Zaki brings a vast wealth of medical experience to Redwood during a time when our company is rapidly growing," said Jason Cardiff, President and CEO. "His recruitment as Chief Medical Officer represents our confidence that not only will the company produce incredibly sophisticated products in the future but also that our growth necessitates additional scientific expertise. With the aid of his impressive international experience, Redwood Scientific Technologies will be positioned to expand into foreign markets."

Dr. Zaki joins Redwood from his previous position as the President and CEO of International Medical Consultants. He graduated 6th in his class from the prestigious Al Azhar University Medical School in Cairo, Egypt. As a cardiac surgeon, he has integrated Western medical practices into his work throughout the Middle East. In 2009, he was appointed by the U.S. Embassy in Egypt to be the official medical liaison during President Barack Obama's visit. From 1995-2006, he was Medical Director of the International Department of the Washington Hospital Center. In 1995, Dr. Zaki developed an international patient program to expand the Washington Hospital Center's communications worldwide. In 2001, he was appointed as the first President of the Institute of International Health at the George Washington University Medical Center and also as Medical Director of the International Program at Georgetown University Hospital. He has also served as medical advisor to the Armed Forces of the UAE.

28)     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

29)     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about April 6, 2016, the Defendant published and disseminated certain statements, entitled "*TBX-FREE Sales Surpass 10,000 Units Sold.*," which provided, in pertinent part, as follows:

LOS ANGELES, April 6, 2016 /PRNewswire/ -- Redwood Scientific Technologies, Inc. today announced that it has sold over 10,000 units of TBX-FREE since the product first launched in December of 2015.

"We are incredibly proud of the progress TBX-FREE has made in helping smokers around the world quit their harmful addiction to cigarettes," said Jason Cardiff, President and CEO. "Smokers are clearly responding well to the benefits offered by the oral strip delivery technology that is in TBX-FREE. Simply put: pills, patches, and lozenges are obsolete methods of drug delivery, and given the high number of smokers who fail at quitting; they clearly are ineffective."

According to the CDC, there are an estimated 40 million smokers within the United States. With such a large amount of potential customers, TBX-FREE is poised to obtain a huge market presence by providing an effective alternative to nicotine replacement therapy. Even more noteworthy is that TBX-FREE has passed the 10,000 units sold mark in the space of only 3 months.

Additionally, customers who complete their first month of TBX-FREE will now receive supplemental material that includes instructions for after their first 30 days, important information on smoking recurrence, a certificate of completion, and other helpful items.

30)     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

31)     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about April 11, 2018, the Defendant published and disseminated certain statements, entitled "*Correction: Opioids Addiction Can be Fixed With Blockchain*" which provided, in pertinent part, as follows:

**Redwood Scientic Technologies (RSCI), the global leader in oral thin _lm delivery for over the counter drugs, has started the early stages of exploration for delivering prescription opioids in oral thin _lm strips.**

According the hhs.gov and FDA, the United States is experiencing an opioid abuse epidemic with more than 200,000 US cases per year. By modifying prescription drug opioids into an oral thin _lm delivery strip, RSCI believes it can reduce the abuse by preventing users from crushing the pills for addictive use through IV selfinjections, inhalation through combustible methods such as a cigarette or nasal abuse similar to cocaine.

RSCI also announced that it will utilize its own individual proprietary techniques of blockchain and barcodes for safety, tracking, and monitoring all levels of the opioid based products. The company strongly believes that this will solve the numerous "black market" product issues and "back door dealing". According to Jason Cardiff, RSCI CEO states "Using blockchain and our unique barcode system on each strip, as well as each container and exterior foil, will allow inventory tracking on all levels and their path of distribution."

In addition, RSCI is in the early stages of creating a patent for oral thin _lm opioid strips, their distribution as well as other opioid based products on the market. The company believes that the patent designs will become a center piece for their prescription-based business.

RSCI believes that the widespread opioid abuse and addiction can be curbed using the oral thin film strip delivery method by preventing pill crushing to form opioid medications for injection, inhalation or through the nasal passage. Patients who are under pain management would not be affected. As a matter of fact, the oral thin film delivery method would allow for immediate effectiveness by being administered sublingually within 20 seconds.

Jason Cardiff, RSCI CEO states, "If we as a company can deliver safer versions of opioids to the market and help save the lives of people suffering from pain then we have developed a truly amazing delivery mechanism." This is not the _rst time that the company has been on the forefront of life altering and longevity products such their revolutionary smoking cessation aid, TBX FREE. TBX-FREEs success is due to the active ingredient cytisine, which has been studied by many medical groups and universities and has been reported back to the company by its users tremendous results.

RSCI currently has 12 products in the market and is growing its suite faster than planned, with plans to have prescription-based medications in the market by the first quarter of 2019.

32)     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

33)     As a further example of such material misrepresentations, omissions and/or misleading or false information provided to the Plaintiff, on or about May 14, 2018, the Defendant

published and disseminated certain statements, entitled "*Redwood Scientific Technologies, Inc.,*

*Will Up-list Trading on OTC Market*" which provided, in pertinent part, as follows:

> UPLAND, Calif., May 14, 2018 /PRNewswire/ -- Redwood Scientific Technologies  (OTC: RSCI), the leader in oral thin film delivery for over-the-counter lifestyle and wellness products, announces that as of the close of business day May 11, 2018, it has started the process of up-listing (OTC: RSCI) to the OTC markets QB. The company believes the up-listing process will be completed sometime in Q3 but is also cautiously optimistic about the time line and understands the importance of being a fully reporting company.
>
> Jason Cardiff, RSCI Founder and President commented, "We look forward to being a fully reporting and transparent public company for our shareholders as well as the public." Jason also stated that, "As we start distribution with the nation's largest national pharmacy chain, being a fully reporting company gives us a much greater level of confidence to our partners and shareholders."

34)     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

35)     Defendant RSCI has committed fraud and has made material misrepresentations and omitted material information while having a duty to disclose the same to the Plaintiff, prior to and in connection with the offer, purchase and sale of securities with Auctus, and in connection with the Transaction Documents by which the Plaintiff invested hundreds of thousands of dollars in the Company.

36)     Moreover, Defendant RSCI has been the subject of a federal court litigation by the Federal Trade Commission (FTC), in an action styled as *Federal Trade Commission v. Jason Cardiff, et al., Case No. 5:18-cv-02104-SJO-PLA (C.D. CA.)*(hereinafter the "FTC Litigation"). Upon information and belief, the FTC Litigation has created uncertainty and allegations which have caused irreparable harm to the Plaintiff and the risk of its entire investment. A copy of the Docket in the FTC Litigation is attached, restated and incorporated by reference herein as **<u>Exhibit E</u>**.

37)     As a direct and proximate cause of the violations of the federal and state securities laws of the Defendant, Plaintiff Auctus has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

### C.    Defendant's Events of Default and Breaches of SPA's and Notes

38)     Based upon the fraud and deceit and securities fraud by the Defendant, the Plaintiff contends that it has a bona fide basis to prosecute claims on the Transaction Documents, and that any understandings and/or agreements to the contrary are fraudulent and void, whether *ab initio* or otherwise, and/or voidable.

39)     Thus, the Plaintiff asserts that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "Events of Default," of the Note. These Events of Default included, *inter alia*, breaches of following provisions of the Transaction Documents: a) Sections 1.3 (Authorized Shares); b) Sections 1.4(g) (Sub-penny conversion price); c) Section 1.4(h) (Failure to Deliver Common Stock prior to Delivery date); d) Section 2.8 (Non- circumvention); e) Section 3.1 (Failure to pay principal or interest); f) Section 3.2 (Failure to Honor Conversion); g) Section 3.4 (Breach of Agreement and covenants – Sections 2.8 of the Note (Noncircumvention) and 1.3 (Authorized Shares)); h) Section 3.5 (Breach of Representations and Warranties -Section 3(g) (SEC Documents; Financial Statements)) of that certain Securities  Purchase Agreement (the "SPA") by and between RSCI and AFL dated March 15, 2019; i) Section 3.10 (Failure to Comply with the Exchange Act); and j) Section 4.14 (Failure to notify of  Future Financing). Thereafter, it is undisputed that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Auctus Note. In addition, pursuant to Section 3.1, an Event of Default shall have occurred by the failure of the Company to pay the principal or interest when due

on the Note, whether at maturity, upon acceleration, or otherwise. *See* Note (**Exhibit B)** § 3.1. This Event of Default, together with others, have occurred and continue to occur.

40)     Upon the occurrence of an Event of Default under Section 3.1 of the Auctus Note, the entire principal and accrued interest shall be due and owing hereunder. Furthermore, an Event of Default pursuant to Section 3 of such Note, the Company is required to pay, and shall pay,

41)     Plaintiff Auctus the "Default Sum" (as defined therein), due under the Note as multiplied by Two Hundred and 00/100 (200.00%) percent.. Thus, as of August 13, 2019, the Company owes Plaintiff Auctus, under the SPA and the Note, the Default Sum Totaling One Million - Six  Hundred Forty - One Thousand - Three Hundred – Forty - One and 58/100 (**$1,641,341.58)** Dollars (U.S.). *See* Auctus Schedule as of August 13, 2019, attached, restated and incorporated by reference herein as **Exhibit 1**. Until paid, the Default Sum shall continue to accrue the default interest rate of Twenty-four and 00/100 (24.00%) percent per year, provided by the Note.

42)     In sum, the Defendant has committed securities fraud, unfair and deceptive trade practices, and has perpetrated a fraud and deceit upon the Plaintiff, which suffered as a consequence. Throughout, the Defendant has been unjustly enriched and converted the Plaintiff's assets, causing it to suffer further damages and injuries. As a result of the fraudulent scheme, actions, concealment, and omissions of the Defendant, the Plaintiff lost substantial monies and lost opportunity in such assets.

## V. VIOLATIONS OF LAW
## COUNT I - VIOLATIONS OF FEDERAL SECURITIES LAWS

43)     The Plaintiff reasserts Paragraphs 1 through 42 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

44)     The Defendant violated Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

      a.      employed manipulative and deceptive devices and contrivances;
      b.      employed devices, schemes and artifices to defraud;
      c.      made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and
      d.      engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff.

45)     As a direct and proximate cause of the violations of the federal securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT II - VIOLATIONS OF MASSACHUSETTS STATE SECURITIES LAWS

46)     The Plaintiff reasserts Paragraphs 1 through 45 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

47)     The Defendant violated Massachusetts Uniform Securities Act, Massachusetts General Laws Chapter 110A, §§ 101, *et seq.*, *as amended*, in that, as described herein, it offered and sold securities by means of untrue statements of material fact.

48)     The Defendant recklessly and intentionally omitted disclosure of pertinent material facts in an attempt to make its previous statements appear to not be misleading.

49)     As a direct and proximate cause of the violations of the Massachusetts state securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable

harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT III – BREACH OF CONTRACT

50)     The Plaintiff reasserts Paragraphs 1 through 49 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

51)     Pursuant to the Security Purchase Agreement and the Note, the Fund invested in the Company and sought to become a shareholder, in good faith, to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.

52)     The Fund alleges that the Company is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing. A breach of contract is failure without excuse to perform a duty which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact. If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

53)     The Fund contends that the Defendant breached its various contracts with the Plaintiff by its conduct, as described herein.

54)     The Defendant, by its conduct described herein, violated the Purchase Agreement and the Note, breaching its contract with the Plaintiff.

55)     As a direct and proximate cause of the Defendant's breaches of its contracts, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IV – BREACHES OF IMPLIED
## <u>COVENANT OF GOOD FAITH-FAIR DEALING</u>

56)      The Plaintiff reasserts Paragraphs 1 through 55 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

57)      It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

58)      A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Company breached and failed to comply with the covenant of good faith and fair dealing. The law is clear - the Fund had binding contracts and the Company has no legal basis, as a matter of law, to avoid its obligations under the Note or the damages, including but not limited to damages set forth pursuant to Section 3.10 of such Note which arose as a result from the breach of the Purchase Agreement and the Note.

59)      The Defendant had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contracts, and statements made to the Plaintiff to induce it to enter into the contracts and provide assets to the Defendant in exchange for its promise to repay the same, with interest.

60)      Under the covenant, the Defendant was obligated to a good faith performance of its obligations under the Purchase Agreement and the Note with the Plaintiff, and to be faithful and consistent to the justified expectations of the Plaintiff.

61)     As described above, the Defendant breached the implied covenant of good faith and fair dealing with the Plaintiff.

62)     As a direct and proximate cause of the Defendant's breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT V – UNJUST ENRICHMENT

63)     The Plaintiff reasserts Paragraphs 1 through 62 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

64)     The Defendant illegally received assets and benefits from the Plaintiff, as arising from its false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

65)     The Defendant's actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

66)     The Defendant has been unjustly enriched by its actions, as described herein.

67)     As a direct and proximate cause of the Defendant's unjust enrichment, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VI – BREACH OF FIDUCIARY DUTY

68)     The Plaintiff reasserts Paragraphs 1 through 67 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

69)     A fiduciary relationship existed between the Plaintiff and the Defendant, requiring it to act with a duty of the utmost loyalty and trust on behalf of the Plaintiff.  As a fiduciary, the Defendant was required to maintain and protect the welfare of the Plaintiff.

70)     By engaging in the conduct described herein, the Defendant breached its fiduciary duties to the Plaintiff.

71)     As a direct and proximate cause of the Defendant's breach of fiduciary duty, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## **COUNT VII – FRAUD AND DECEIT**

72)     The Plaintiff reasserts Paragraphs 1 through 71 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

73)     The actions of the Defendant described herein constitute fraud and deceit, including but not limited to the following:

> a)     the Defendant made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;
> b)     the Defendant made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and
> c)     the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

74)     As a direct and proximate cause of the Defendant's fraud and deceit, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VIII - NEGLIGENT MISREPRESENTATION

75)     The Plaintiff reasserts Paragraphs 1 through 74 of the Complaint, together with

**Exhibits**, and restates and incorporates them herein by reference.

76)     The conduct of the Defendant as described herein constitutes negligent

misrepresentation in that the Defendant negligently provided the Plaintiff with erroneous and

misleading information, and negligently omitted material information with a duty to disclose, to

the Plaintiff's detriment.

77)     As a direct and proximate cause of the Defendant's negligent misrepresentations,

the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and

consequential damages, including, but not limited to, loss of profits, interest, and other damages,

injuries, and losses, to its detriment.

## COUNT IX - VIOLATIONS OF MASSACHUSETTS
## CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11

78)     The Plaintiff reasserts Paragraphs 1 through 77 of the Complaint, together with the

**Exhibits**, and restates and incorporates them herein by reference.

79)     At all relevant times herein, the Defendant conducted a trade or business, as defined

by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of

Massachusetts.

80)     The conduct of the Defendant as described herein, constitutes unfair and deceptive

trade practices, under Sections 2 and 11 of the Consumer Protection Act, including but not limited

to claims that the Defendant:

> a)     executed the Securities Purchase Agreements and the Note with full knowledge and understanding of the Defendant's obligations to the Plaintiff;
> b)     fraudulently induced the Plaintiff to invest in the Company and thereby breached its promise to repay the Plaintiff;

      c)      fraudulently concealed from the Plaintiff the full and complete financial and operational details and prospects of the Company in inducing the Plaintiff to make its investment in the Company;

      d)      knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

      e)      violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

81)      As a direct and proximate cause of the Defendant's violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## VI. **REQUEST FOR RELIEF**

WHEREFORE, the Plaintiff, Auctus Fund, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)      Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)      Determine that the Defendant is liable for all damages, losses, and costs, as alleged herein;

C)      Determine and award the Plaintiff, Auctus Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendant, as set forth herein;

D)      Render a judgment and decision on behalf of the Plaintiff, Auctus Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendant is liable, in all respects;

E)      Order, decide, adjudge, and determine that the liability of the Defendant,  is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)      Award the Plaintiff, Auctus Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G)      Award the Plaintiff, Auctus Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

H)      Award the Plaintiff, Auctus Fund, LLC, multiple, double, treble, and/or punitive damages in an amount to be determined;

I)      Enter judgment on behalf of the Plaintiff, Auctus Fund, LLC, on the Complaint; J) Order declaratory relief, as appropriate and as this Honorable Court deems necessary; and/or

J)      Any additional relief which this Honorable Court deems just and proper.

**THE PLAINTIFF, AUCTUS FUND, LLC,**
**<u>DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**

Respectfully Submitted,
PLAINTIFF, Auctus Fund LLC,

By its Attorneys,

    /s/  *Philip M. Giordano*
Philip M. Giordano, Esq. (BBO No. 193530)
Sophia E. Kyziridis, Esq. (BBO No. 703590)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Email: skyziridis@reedgiordano.com

Dated: October 16, 2019